***UNITED STATES DISTRICT COURT***
***DISTRICT OF MAINE***

| | | |
|---|---|---|
| ***EDWARD B. BARCLAY,*** | ) | |
| | ) | |
| ***Plaintiff*** | ) | |
| | ) | |
| ***v.*** | ) | ***No. 2:12-cv-156-JHR*** |
| | ) | |
| ***STEVAN GRESSIT,*** | ) | |
| | ) | |
| ***Defendant*** | ) | |

***MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT***[1]

Defendant Stevan Gressit moves for summary judgment as to plaintiff Edward B. Barclay's complaint that Gressit, a fellow passenger on a 2010 U.S. Airways flight, negligently stored luggage that fell out of an overhead bin, striking and injuring Barclay. *See* Defendant Stevan Gressit's Motion for Summary Judgment ("Motion") (ECF No. 22) at [1]-[2]; Complaint for Personal Injury ("Complaint") (ECF No. 1) ¶¶ 6-11. For the reasons that follow, I deny the Motion.

## I. Applicable Legal Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all proceedings in this case, including trial, and to order the entry of judgment.

moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

**B. Local Rule 56**

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit,

deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

The parties' statements of material facts, credited to the extent that they are either admitted or supported by record citations in accordance with Local Rule 56, with disputes resolved in favor of Barclay as nonmovant, reveal the following.[2]

Barclay is a resident of the State of Oregon and has been for many years. Plaintiff's Statement of Material Facts ("Plaintiff's Additional SMF"), commencing on page 3 of Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Opposing SMF") (ECF No. 37), ¶ 1; Defendant Stevan Gressit's Reply to Plaintiff's Statement of Material Facts ("Defendant's Reply SMF"), commencing on page [4] of Defendant Stevan Gressit's Reply to Plaintiff's Response to Defendant's Statement of Material Facts ("Defendant's Requests To Strike") (ECF No. 43), ¶ 1.[3] He is a retired Honeywell Corporation executive. *Id.*

On October 13, 2010, Barclay purchased an airline ticket from U.S. Airways Inc. for a round trip from Portland, Oregon, to Boston, Massachusetts. *Id.* ¶ 2. He was scheduled to depart Portland, Oregon, on October 16, 2010, and return on October 18, 2010. *Id.* The itinerary required a stop and a flight change in Charlotte, North Carolina. *Id.*

---

[2] Statements that are qualified are assumed to be admitted subject to that qualification, unless a qualification indicates otherwise. To the extent that I have incorporated one side's qualification into the statement of the other, I have determined that the qualification is supported by the record citation(s) given. I have omitted qualifications that are unsupported by the citation(s) given or redundant.

[3] Gressit improperly replies to Barclay's *response* to his statements of material facts, requesting that a number of those responses be stricken. Pursuant to Local Rule 56, a reply statement of material facts must be "limited to any *additional facts* submitted by the opposing party." Loc. R. 56(d) (emphasis added). Moreover, the rule contemplates that a party may request to strike only statements of facts, not *responses* or replies to statements of facts. *Id.* 56(e). On that basis, I disregard the reply to the responsive SMF. I note that, in any event, seven of the eight requests to strike are superfluous in that they challenge Barclay's success in controverting the underlying statements, *see generally* Defendant's Requests To Strike, something that the court is capable of ascertaining for itself. While Gressit invokes a hearsay objection in support of his request to strike Barclay's denial of paragraph 9, *see id.* ¶ 9, that objection is a legal argument that could have been raised in his reply brief. Even taking the objection into account, it is not outcome-determinative for the reasons discussed below in connection with Defendant's SMF ¶ 9.

On October 18, 2010, Barclay boarded U.S. Airways Flight 1801, a Boeing 737-400, placed his carry-on backpack in the overhead passenger carry-on luggage bin above his seat, and took his assigned seat (20D). *Id.* ¶ 3. A few minutes later, one of the flight attendants passed by Barclay and closed the bin. *Id.* ¶ 4. Barclay heard her say that she was closing it because it was full. *Id.*[4] A few minutes later, Gressit boarded Flight 1801 talking on his cell phone as he walked down the aisle carrying several items of carry-on baggage. *Id.* ¶ 5.[5] Gressit stopped right by Barclay and opened the overhead bin door right above seat 20D. *Id.* ¶ 6. Barclay stood right next to him as he attempted to place one or more items of his carry-on baggage in the bin above seat 20D with one hand while continuing to talk on his cell phone. *Id.* He was unable to put his carry-on item(s) in the bin with one hand, so he told the other person on the line to hold on while he put his cell phone down on his assigned seat (20C). *Id.* ¶ 7. He then used both hands to place his carry-on item(s) in the bin above Barclay. *Id.* ¶ 8. He closed the bin, took his seat, and continued his phone conversation. *Id.*

A few minutes later, John Doe 2, another passenger on Flight 1801 seated somewhere behind Barclay, opened the same overhead bin above Barclay, and one or more items fell out, striking Barclay on the back of the head and injuring him. *Id.* ¶ 9.[6] A flight attendant witnessed the incident and came forward to assist. *Id.* ¶ 10. Barclay saw a flight attendant hand a manila file or folder containing papers to the gentleman in seat 20C (Gressit), who asked her, "Where

---

[4] Gressit qualifies this statement, asserting that, during his deposition, Barclay testified that, when he had stored his backpack in the overhead bin, the bin was not full. Defendant's Reply SMF ¶ 4; Deposition of Edward B. Barclay ("Barclay Dep."), Exh. B (ECF No. 22-3) to Defendant Stevan Gressit's Statement of Material Facts ("Defendant's SMF") (ECF No. 29), at 16.

[5] Gressit qualifies this statement, asserting that, during his deposition, Barclay testified that he saw Gressit coming down the aisle talking on his cell phone, did not state how many and what items Gressit was carrying, and said that Gressit put his cell phone down before he stowed his property in the overhead bin. Defendant's Reply SMF ¶ 5; Barclay Dep. at 15.

[6] I omit the second sentence of paragraph 9, which is neither admitted nor supported by the citation given.

did you get that?" Plaintiff's Additional SMF ¶ 11; Barclay Dep. at 9-12.[7] Barclay stated in his deposition that the item that struck him was a file. Defendant's SMF ¶ 7; Plaintiff's Opposing SMF ¶ 7.

The incident occurred before the B737-400 was pushed back from the parking ramp; that is, before the aircraft moved and while it was still parked. Plaintiff's Additional SMF ¶ 14; Defendant's Reply SMF ¶ 14. The flight attendant asked Barclay if he wanted to get off the airplane. *Id.* ¶ 15. He declined and stated that he wished to continue on to Charlotte. *Id.* During the flight Barclay began to suffer headaches, neck pain, right ear pain, and flashing lights when he closed his eyes. *Id.* ¶ 16. The flight crew sent a message to the U.S. Airways facility in Charlotte and asked to have an emergency medical technician available for Barclay when Flight 1801 arrived in Charlotte. *Id.* ¶ 17.

Barclay claims that Gressit breached his duty of care by failing to properly and safely stow his luggage as would a reasonably prudent person. Defendant's SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8.[8] He alleges, in his complaint, that the overhead bin was full to capacity when Gressit attempted to place his property in there. Defendant's SMF ¶ 9; Complaint ¶ 7.[9] Barclay stated during his deposition that, when he had stored his backpack in the bin, it was not full. Defendant's SMF ¶ 10; Plaintiff's Opposing SMF ¶ 10. Barclay alleges, in his complaint, that Gressit was engaged in a conversation on his cellular phone while storing his file. *Id.* ¶ 11.

---

[7] I omit the first sentence of paragraph 11 as well as paragraph 12, which are neither admitted nor supported by the citations given. My recitation incorporates Gressit's qualification of the second sentence of paragraph 11.

[8] My recitation includes Barclay's qualification.

[9] I have substituted the word "alleges" for the word "assumes." Barclay denies that he "assumes" the bin was full, stating that he "knows" it was because the flight attendant stated that it was full and that she was closing it because it was full. Plaintiff's Opposing SMF ¶ 9. Gressit requests to strike this denial on the basis that it is inadmissible hearsay. Defendant's Requests To Strike ¶ 9. Even assuming that the denial, as worded, should be stricken on that basis, nothing turns on it. Barclay asserts in his statement of additional facts that he heard the flight attendant say that she was closing the bin because it was full, Plaintiff's Additional SMF ¶ 4, and Gressit does not interpose a hearsay objection to that statement, Defendant's Reply SMF ¶ 4. In any event, even if the flight attendant's statement were excluded, a jury reasonably could infer that it was full from her act of closing the bin.

At his deposition, he testified that Gressit first put his cellular phone down and then stored his file. Defendant's SMF ¶ 12; Barclay Dep. at 15.[10] Barclay states that he did not actually see Gressit force anything into the bin. Defendant's SMF ¶ 14; Barclay Dep. at 15.[11] Barclay testified at his deposition that he did not see what Gressit was storing in the overhead bin. Defendant's SMF ¶ 15; Barclay Dep. at 13.[12] Barclay also affirms that he did not actually see Gressit raise any item into the bin. Defendant's SMF ¶ 16; Barclay Dep. at 14.[13] Barclay did not see what Gressit stored. Defendant's SMF ¶ 18; Barclay Dep. at 13.[14] The only item that Barclay saw after the fact was a folder. Defendant's SMF ¶ 20; Barclay Dep. at 11-12.[15]

## III. Discussion

Gressit seeks summary judgment as to the negligence claim against him on two bases: that the jury would have to engage in impermissible speculation to return a verdict in Barclay's favor and that Barclay offers no admissible evidence that it was in fact Gressit's property that struck him and caused the injuries in question. *See* Motion at [1]. He argues, and Barclay does

[10] I omit that portion of paragraph 12 characterizing Barclay as having made a contradictory statement during his deposition, Defendant's SMF ¶ 12, which Barclay denies and which is argument rather than fact. I omit paragraph 13, Defendant's SMF ¶ 13, which Barclay denies, viewing the evidence in the light most favorable to Barclay as nonmovant.

[11] Barclay denies this statement, Plaintiff's Opposing SMF ¶ 14; however, the denial is not supported by the citations given.

[12] I omit Gressit's further statement that Barclay testified that he did not see what Gressit was doing in the overhead bin, Defendant's SMF ¶ 15, which is neither admitted nor supported by the citation given. Barclay denies that he testified that he did not see what Gressit was storing in the overhead bin, Plaintiff's Opposing SMF ¶ 15; however, his denial is not supported by the citations given.

[13] Barclay denies this, Plaintiff's Opposing SMF ¶ 16; however, the denial is not supported by the citations given. I omit Defendant's SMF ¶ 17, which Barclay denies, Plaintiff's Opposing SMF ¶ 17, viewing the evidence in the light most favorable to Barclay as nonmovant.

[14] I omit the remainder of Defendant's SMF ¶ 18 as well as Defendant's SMF ¶ 19, which Barclay denies, Plaintiff's Opposing SMF ¶¶ 18-19, viewing the evidence in the light most favorable to Barclay as nonmovant.

[15] Barclay denies this paragraph, Plaintiff's Opposing SMF ¶ 20, but his denial is not supported by the citations given. I omit paragraphs 18 through 22 of the Plaintiff's Additional SMF, sustaining, for the reasons set forth in my separate order of today's date granting Gressit's motion to exclude expert witness testimony, Gressit's objection that these statements of Barclay's expert witnesses are based on common sense rather than expertise. *See* Defendant's Reply SMF ¶¶ 18-22; Defendant Stevan Gressit's Reply Memorandum in Support of Motion for Summary Judgment ("Reply") (ECF No. 42) at [2].

not contest, that Maine law supplies the rule of decision on the first point. *See id*. at [3]-[7]; *see generally* Response.[16]

**A. Jury Speculation**

"A claim of negligence requires proof of a duty owed, breach of that duty, and an injury proximately caused by the breach." *Gray v. TD Bank, N.A.*, 2012 ME 83, ¶ 16, 45 A.3d 735, 740. The Motion implicates the third of these elements.

The Law Court has defined causation as "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." *Walter v. Wal–Mart Stores, Inc.*, 2000 ME 63, ¶ 17, 748 A.2d 961, 968 (citation and internal quotation marks omitted). More specifically:

> Proximate cause is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred. In light of this definition, we have stated that a negligent act is the proximate cause of an injury only if the actor's conduct is a substantial factor in bringing about the harm.

*Webb v. Haas*, 1999 ME 74, ¶ 20, 728 A.2d 1261, 1267 (citations and internal quotation marks omitted).

---

16 In diversity cases, this court applies the choice of law rules of the forum state (Maine). *See, e.g., In re Volkswagen & Audi Warranty Extension Litig*., 692 F.3d 4, 14 (1st Cir. 2012). As Gressit points out, *see* Motion at [4]-[5], for purposes of choice of law analysis, Maine applies the law of the state with the most significant contacts and relationships to the occurrence, *see, e.g., State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 22, 995 A.2d 651, 660 ("In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties" based on enumerated factors.) (quoting Restatement (Second) Conflict of Laws § 146). In this case, the injury occurred on an airport tarmac in Massachusetts, the plaintiff, Barclay, is a resident of Oregon, and the defendant, Gressit, is a resident of Maine. As Gressit observes, *see* Motion at [4]-[5], in *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me. 1970), the Law Court applied the substantive law of Maine in a case stemming from an automobile accident in Massachusetts in which both parties were Maine residents and the automobile was garaged and insured in Maine, reasoning that the "Massachusetts contacts are merely fortuitous in that the accident happened there and her concerns, if any, are minimal[,]" *Beaulieu*, 265 A.2d at 616. The occurrence of the injury at issue during the stopover of an airplane in Massachusetts appears equally fortuitous in this case.

"The question of causation is generally one of fact to be determined by the fact-finder, and a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause." *Dyer v. Maine Drilling & Blasting, Inc.*, 2009 ME 126, ¶ 32, 984 A.2d 210, 219 (citation and internal quotation marks omitted).

> Nevertheless, if the evidence produced by the plaintiff in opposition to a motion for summary judgment would, if produced at trial, entitle the defendant to a judgment as a matter of law, the defendant is entitled to a summary judgment. A defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment.

*Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 757 (citations and internal quotation marks omitted).

Gressit argues that a jury would have to engage in speculation to find him negligent "because the file could have appeared to have been safely stored and stable in the overhead bin when Mr. Gressit closed the bin door; however, it may have been impacted by the closing of the door, or it could have been disturbed by the unknown passenger who ha[d] opened said door and reached in." Motion at [4]. He notes that Barclay stated that the overhead bin was not full when he (Barclay) placed his backpack in there, and Barclay did not actually see Gressit force anything into the bin. *Id*. at [7]. He analogizes this case to others in which the Law Court has determined that the evidence demonstrated only that it was possible, but not more likely than not, that a defendant's conduct proximately caused an injury. *See id*. at [6]-[7] (discussing *Houde*; *Cyr v. Adamar Assocs. Ltd. P'ship*, 2000 ME 110, 752 A.2d 603; *Merriam v. Wanger*, 2000 ME 159, 757 A.2d 778).

Nonetheless, the evidence viewed in the light most favorable to Barclay would enable a trier of fact to conclude that it is more likely than not that Gressit's conduct was a substantial factor in bringing about Barclay's injury and, hence, proximately caused it. This is so because, (i) although the overhead bin was not full when Barclay stored his belongings there, a flight attendant later closed it, and Barclay heard her say she was doing so because it was full, (ii) Barclay then observed Gressit, who boarded the plane carrying luggage and talking on a cell phone, open the overhead bin, attempt to store something one-handed, put his cell phone down, use both hands to store something, close the bin door, and resume his cell phone conversation, (iii) shortly afterward, an unknown person opened the bin and one or more items fell out, striking Barclay on the back of the head and injuring him, and (iv) Barclay saw a flight attendant hand a manila folder containing papers to Gressit, who asked where she got it. At all relevant times, the plane had remained stationary on the tarmac.

On these facts, a reasonable fact-finder could find it more likely than not that Gressit proximately caused Barclay's injuries by placing his belongings into a full overhead bin in a precarious manner. Barclay adduces evidence that Gressit was the last person to load anything into the bin before the unknown person opened the bin door. There is no evidence that the plane moved, causing the bin contents to shift, or that the unknown person did anything other than simply open the bin door before some of the contents fell out, striking and injuring Barclay. Gressit then had a conversation with a flight attendant indicating that he recognized an item that fell out of the bin as his.

The plaintiffs in *Houde*, *Cyr*, and *Merriam* offered significantly less evidence to support a finding of proximate cause. *See Houde*, 2001 ME 183, ¶ 12, 787 A.2d at 759-60 (jury would have to engage in speculation to find that soot on floor was cause of plaintiff's fall when,

although the plaintiff testified that soot frequently was tracked into the kitchen, making the floor slippery, she thought she had cleaned the soot entirely the prior night, neither she nor anyone else saw soot on the floor on the morning of her accident or immediately following her fall, and the only evidence supporting an inference that she slipped on soot was a dark smudge that looked like soot that she found on the knee of her pajamas several days after her fall); *Cyr*, 2000 ME 110, ¶ 7, 752 A.2d at 604 (relation between hotel's security measures and patron's death was too uncertain and tenuous to hold hotel owner liable in circumstances in which the evidence did not reveal whether the patron, whose body was found on property not owned by the hotel, voluntarily left the hotel with the murderer or whether he abducted her); *Merriam*, 2000 ME 159, ¶¶ 15-18, 757 A.2d at 782 (jury could not infer that physician's negligence caused plaintiff's loss of fertility when neither of the plaintiff's experts testified that her damages would have been avoided had the physician acted properly, and the evidence before the jury suggested several other potential sources of harm).

**B. Lack of Admissible Evidence of Property Ownership**

Gressit finally argues that Barclay offers no admissible evidence that the item or items that struck him belonged to Gressit, as a result of which the jury would have to engage in speculation to so conclude. *See* Motion at [8]. He emphasizes that Barclay did not see what he was storing or doing in the overhead bin, did not actually see him lift or raise any item into the bin, did not see what he stored, how he stored it, or if he stored anything at all, cannot confirm how many items fell on him and what they were, and only saw one item after the fact, a folder that he claims belonged to Gressit. *See id.*

While Barclay did not see what items Gressit stored, he observed that Gressit engaged in conduct consistent with storing something in the overhead bin, which a flight attendant

previously had closed and stated was full. There is no evidence that anyone touched the bin until an unknown passenger opened it, at which point Barclay was struck by one or more falling items. Barclay then saw a flight attendant hand a folder to Gressit, who asked her how she got it. On this evidence, a fact-finder reasonably could infer that an item or items that struck and injured Barclay belonged to Gressit.

## IV. Conclusion

For the foregoing reasons, Gressit's motion for summary judgment is **DENIED**.

Dated this 24th day of July, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge