UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| EDWARD B. BARCLAY, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   No. 2:12-cv-156-JHR |
| | ) |
| STEVAN GRESSIT, | ) |
| | ) |
|     Defendant | ) |

*MEMORANDUM DECISION AND ORDER ON*
*DEFENDANT'S MOTION IN LIMINE*[1]

Defendant, Stevan Gressit, moves to exclude the testimony of plaintiff Edward B. Barclay's three experts, Robert Hulse, Kevin Darcy, and Thomas Miller, on the subject of Gressit's alleged negligence. *See* Defendant's Motion in Limine ("Motion") (ECF No. 23). As limited to the issue of Gressit's alleged negligence, the Motion is granted for the reasons that follow.

### I. Applicable Legal Standards

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

  **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

  **(b)** the testimony is based on sufficient facts or data;

  **(c)** the testimony is the product of reliable principles and methods; and

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all proceedings in this case, including trial, and to order the entry of judgment.

    **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"[I]t is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis." *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006). "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citations omitted). "In other words, Rule 702, as visualized through the *Daubert* [*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)] prism, requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* (citation and internal quotation marks omitted).

## II. Discussion

Gressit seeks to exclude the testimony of Hulse, Darcy, and Miller on three bases: that (i) the testimony is based on common sense, not expertise, (ii) the experts' conclusions are speculative, and (iii) the testimony of three expert witnesses all speaking to the same issue is redundant and cumulative. *See* Motion at [1]; *see also generally* Defendant's Citations in Support of Motion To Strike ("Citations to Motion") (ECF No. 31); Defendant's Reply Memorandum in Support of Motion To Strike ("Reply") (ECF No. 44).

Barclay rejoins that (i) the challenged testimony is sufficiently grounded in expertise to survive scrutiny and, even to the extent that it is based on common sense, cannot as a practical matter be separated from the undisputed expert testimony, (ii) the final two points are insufficiently argued to be preserved and, (iii) even if they are not waived, they lack merit. *See*

Plaintiff's Response to Defendant's Motion in Limine (Also Titled Motion To Strike) ("Response") (ECF No. 35) at 2-6.

I conclude, for the reasons discussed below, that the testimony of Hulse, Darcy, and Miller, to the extent that it bears on Gressit's alleged negligence, is predicated on common sense and should be excluded on that basis, despite Barclay's concern that separating out such testimony is impractical. I need not, and do not, reach Gressit's remaining grounds for exclusion of that testimony, nor do I decide whether the testimony should be allowed for some other purpose.

As this court has noted:

> In this judicial district, a statement of the obvious – which is within the ken of a lay jury or a judge presiding at a bench trial – is not a proper subject of expert testimony. Merely placing an expert's sheen on common sense is not enough. . . . 'Expert' testimony about matters of common sense is not helpful to a jury and carries the risk of unfair prejudice.

*U.S. Bank Nat'l Ass'n v. James*, 741 F. Supp. 2d 337, 343 (D. Me. 2010) (citations and internal punctuation omitted). *See also, e.g., United States v. Zajanckauskas*, 441 F.3d 32, 39 (1st Cir. 2006) ("Expert testimony does not assist where the [trier of fact] has no need for an opinion because it easily can be derived from common sense, common experience, the [trier of fact's] own perceptions, or simple logic.") (citation and internal quotation marks omitted).

### A. Hulse

Hulse, a 1961 graduate of the U.S. Naval Academy and the U.S. Navy Flight Training Program, as well as, *inter alia*, the "Top Gun" school, served in the U.S. Navy Reserves from 1967 to 1978 and flew as a commercial airline pilot for Continental Airlines from March 1967 until his retirement in October 2001. *See* Affidavit of Captain Robert C. Hulse, included in Exh. G (ECF No. 37-3) to Plaintiff's Response to Defendant's Statement of Material Facts

("Plaintiff's Opposing SMF") (ECF No. 37), ¶¶ 2-3, 6. He was retained by Barclay as an aviation expert. *Id*. ¶ 1.

In Hulse's opinion, the injury sustained by Barclay "was a preventable accident and was directly caused by the negligence of the cabin crew flight attendants on U.S. Airways Flight 1801[,]" who "failed to properly monitor and supervise the proper stowage of baggage as required by federal regulations, and failed to perform the required close attention to their assigned duties during the boarding process of the aircraft." *Id*. ¶ 16. Hulse concurs with Darcy's opinion that Gressit was negligent "in placing his carry-on baggage and file folder in the overhead bin above seat 20D in such a precarious position that when John Doe Number 2 opened the bin a few minutes after Mr. Gressit closed it, Mr. Gressit's carry-on baggage and file folder fell out and struck Mr. Barclay." *Id*. ¶ 17.

At his deposition, Hulse testified that Gressit failed to comply with federal aviation regulations imposing duties on passengers to take care in stowing their luggage. *See* Deposition of Robert C. Hulse ("Hulse Dep.") (ECF No. 23-2), attached to Motion, at 38-40. While he acknowledged that passengers do not necessarily know what is in the federal regulations, *see id*. at 38, he stated that Gressit "was negligent in his actions, he didn't use common sense," *id*. at 40. He answered questions probing the basis for this opinion as follows:

> **Q . . . Your conclusion regarding the negligence of Mr. Gressit, is that based on any of your training as an expert in aviation safety or is that something you base on – you think just can be determined by common sense?**
>
> A There's a number of factors that go . . . into it. Common sense is certainly one. But as people get on the airplane, they should realize they have a responsibility for safety, also, not only of themselves, but with those people around them. And when they fail to properly load the baggage bins there, they endanger the lives – well-being of other passengers when they stow a piece of luggage resting against the door and the door is opened and it falls out and impacts the head of somebody and injures them.

4

**Q** You don't expect passengers like Mr. Gressit to have the training and experience you have in operating airlines, correct?

**A** I would expect Mr. Gressit to have an above average [sic] in common sense and in loading his bag and he would not want to injure somebody, and I think he got complacent there and did not exercise the common sense and he was negligent. He didn't certainly follow the Code of Federal Regulations law that requires him to properly stow his bag as indicated by the – you know, as directed by the flight attendants.

*** 

**Q** Okay. So you would not expect him to have the expertise and the expert training to recognize the hazards that you mentioned and the fact that he should stow his baggage in a way that doesn't allow it to fall out; is that fair?

**A** Not really. It doesn't require any special training. It requires common sense. Okay. You don't walk into a street with traffic flowing, you know, without looking. That's common sense; otherwise, you might get hit. When you put something in an overhead with it resting against the door, you would have to realize – particularly Mr. Gressit who is an educated man, would have to know when that thing is opened it's going to fall out.

**Q** Did you ask [sic] to be an expert to develop the opinion regarding his negligence or is that something you also claim is common sense?

**A** I think that is common sense and basic physics.

***

**Q** You are saying that his laptop could be leaning against the door while it was still open?

**A** The laptop was going to be leaning against the door as he was closing it, and he had the laptop door down far enough that he pushed it shut and the door – the thing rested against the door. The laptop rested against the door. That's the only logical explanation that can be given.

**Q** And, again, that explanation, are you saying that only an expert could reach that conclusion or are you saying that's so evident that it's just common sense and Gressit should have known that?

**A** If it had been stowed properly, it wouldn't have fallen out. And it's not something that an expert would have to observe there. You know, anybody with a basic high school education and the laws of physics should be aware that if

5

something is resting against a door, a heavy object, and if that door is opened, it's going to fall out and there's going to be a very high likelihood of that falling out and injuring somebody if they are seated in an aisle seat.

**Q And the conclusion that his laptop was leaning against the door until the unknown passenger reopened the door, is that something that requires expertise or are you saying that it's so obvious it's just common sense?**

A I think it's common sense. It doesn't require expertise. I mean, you know, if you prop something up and if you take that prop away, what's going to happen? I mean, my grandson can figure that one out.

*Id*. at 51-59.

Barclay points out that Hulse identified common sense as only one of many factors in analyzing Gressit's negligence and testified not only that Gressit failed to use common sense but also that he failed to follow the flight attendants' instructions on baggage stowage, in contravention of federal aviation regulations. *See* Response at 3-4.

Despite Hulse's citation to federal aviation regulations and his reference to "a number of factors[,]" Hulse Dep. at 38-39, 51, he identified only one specific basis for his opinion that Gressit was negligent: common sense (including basic physics), *see id*. at 58-59. This warrants the exclusion of his testimony on the subject of Gressit's negligence.

### B. Darcy

Darcy, a pilot and aeronautical engineer who worked for Boeing Commercial Airplane Company both as a Senior Engineer in stability and control and, later, as an Air Safety Investigator and Chief Investigator, was hired by Barclay as an aviation safety expert. *See* Affidavit of Kevin A. Darcy, Exh. E (ECF No. 36-6) to Plaintiff's Response to Stevan Gressit's Motion for Summary Judgment (ECF No. 36), ¶¶ 1-3, 6, 8. In Darcy's opinion, (i) overhead bin injuries are not new to the airline industry, and airlines are or should be well aware of injuries that have resulted and can result from items falling from overhead bins, (ii) airline policies to

6

charge for checked baggage have increased the likely number of objects falling from overhead bins, (iii) flight attendant groups have publicly pointed out the increasing hazard to themselves and passengers, (iv) the likelihood of objects falling from overhead bins and causing injury can be reduced by proper procedures, bin design, or bin modifications, and (v) there was no indication that U.S. Airways took effective steps to mitigate the increased hazard, even after the risk increased due to increased checked baggage fees. *Id.* ¶¶ 21(a)-(c), (g)-(h).

With respect to Gressit, Darcy concludes that (i) "[m]ore likely than not, Dr. Gressit was careless when he placed his luggage precariously in the overhead bin[,]" (ii) "[m]ore likely than not, his luggage was placed such that it would begin to fall when the bin door was opened[,]" (iii) "[a] reasonably careful adult would know, or should have known that bag(s) placed precariously, and likely held in by the closed bin door, could cause injury[,]" and (iv) "[a] physician should be more likely than a layman to recognize the seriousness of injury caused by an object falling from an overhead bin." *Id.* ¶¶ 21(d)-(f).

Barclay points out that Darcy identified not only common sense but also his engineering experience and knowledge of what the airplane environment is like during boarding prior to pushback as the basis for the first two conclusions regarding Gressit. *See* Response at 3; *see also* Deposition of Kevin B. Dar[c]y (ECF No. 23-3), attached to Motion, at 41.[2]

Nonetheless, Darcy also testified, in response to a question as to whether his conclusion that the bag was leaning against the bin door would have required expertise or was something nonexperts should know from common sense: "I would say a nonexpert should know that from common sense as long as they were – knew enough to know that the airplane wouldn't have been jostled around, that wouldn't have been anything that would cause the baggage to shift at that

---

[2] The name "Darcy" is misspelled "Darsy" in the transcript of Darcy's deposition.

point." *Id*. at 33-34. He added, in response to a question as to whether the conclusion that the bag was likely leaning against the door was something that only an expert would recognize or something that comes from common sense: "Yes, I would say that comes from common sense with the added knowledge that it is unlikely that the airplane would have moved in such a way to have caused the bag to shift against the door." *Id*. at 34. Darcy did not testify, nor is it otherwise apparent, that this "added knowledge" was that of an expert in aeronautical engineering and aviation safety. Rather, it would seem to be within the ken of any layperson who has boarded and flown on airplanes.

With respect to Darcy's final two conclusions regarding Gressit, he testified at his deposition, in relevant part:

> **Q . . . It wouldn't be within your area of expertise to predict what a reasonable, careful adult would do, that's something you conclude based on common sense rather than your professional training; is that right?**
>
> A    Yes. I would like to amend what I said before. I have had some training in human factors and human factors investigations. I would not say, however, that qualifies me to be a psychologist or psychiatrist.
>
> **Q    Okay. Although you are an expert in aeronautical engineering and aviation safety, you would not hold yourself out as an expert on what an average, reasonable adult would do, that's something that you rely on your common sense for?**
>
> A    Yes.
>
> **Q    That's not part of your professional training?**
>
> A    No, no, other than – I also am trained as an accident investigator and, of course, that includes some things like you are talking about. But, no, I am not an expert in that field.

*Id*. at 35-36.

Gressit contends that this passage underscores that Darcy did not rely on his expertise in opining as to what a reasonable person or physician in Gressit's shoes should have known, *see*

Citations to Motion at [2]; Barclay argues that it shows that he did, *see* Response at 3. Gressit has the better argument. While Darcy testified that he had specialized training as an accident investigator, including "human factors" training, he did not explain how he relied on this training to form the opinions at issue. To the contrary, he agreed that he relied on common sense in evaluating what an average, reasonable adult would do. This warrants the exclusion of his testimony on the subject of Gressit's negligence.

### C. Miller

Miller, a Continental Airlines flight attendant since June 1997 and a qualified Flight Service Manager and Lead Flight Attendant, was retained by Barclay as an aviation flight attendant expert. Affidavit of Thomas G. Miller, included in Exh. H (ECF No. 37-4) to Plaintiff's Opposing SMF, ¶¶ 1-2. In Miller's opinion, the injury sustained by Barclay "was a preventable accident and was directly caused by the negligence of the flight attendants aboard U.S. Airways Flight 1801" when "they failed to properly monitor and supervise the proper stowage of baggage by Mr. Gressit as is required by U.S. Airways flight manuals, and . . . federal aviation regulations." *Id*. ¶ 8.

With respect to Gressit, Miller states that "Gressit's carry-on baggage was obviously negligently stowed in the overhead bin above Seat 20D because, when John Doe 2 opened this bin, Mr. Gressit's baggage fell out and hit Mr. Barclay." *Id*. ¶ 9. He adds: "Mr. Gressit must have placed his baggage in the overhead bin in such a precarious position that it was leaning against the overhead bin door after he closed it." *Id*.

During his deposition, Miller testified, in relevant part, as follows:

> **Q** You said you faulted Mr. Gressit for failure to comply with the FARs [federal aviation regulations]?
>
> **A** Yes, also along with basic common sense.

9

\*\*\*

**Q       Sir, your view is that regardless of whether Mr. Gressit should have been familiar with the FARs, any layperson should have known better than to stow the baggage whatever way you believe he did; is that correct?**

A       Yes.

**Q       Because that's common sense and doesn't require, in your view, any of the expert training that you have or the knowledge you have as an expert?**

A       I think common sense doesn't require expert training, correct.

**Q       And, similarly, you would expect anyone with common sense to realize that the way he put in the bags would cause it to lean against the door?**

A       If you are the person stowing it, you should be understanding what you are doing, yes. But for another person to observe it, no.

**Q       No. But it's your position that any passenger, such as Mr. Gressit, should know through common sense that a bag that he placed in the way you believe he placed it would lean against the door when it was shut?**

A       Yes.

**Q       And that conclusion doesn't require him to have or anyone to have any expert training or expertise such as you have?**

A       Correct.

**Q       It's also your testimony that common sense should have told him that when the door opened the likelihood is the bag would fall out, again, not needing any of your expert training or expertise?**

A       Correct.

Deposition of Thomas Miller (ECF No. 23-1), attached to Motion, at 54-58. Barclay argues that Miller made it clear that he faulted Gressit both for failing to follow federal regulations and failing to act with common sense. *See* Response at 4. Yet, the above-quoted passage indicates that Miller did not rely on a federal aviation regulation in support of his opinion that Gressit placed his luggage in the overhead bin in a precarious manner. Instead, he relied on common

sense deductions and inferences from the facts known to him.  This warrants the exclusion of his testimony on the subject of Gressit's negligence.

### D.  Practical Difficulties in Separating Intertwined Testimony

Barclay argues that, "to the extent any of the expert testimony borders on common sense information, such information is intertwined with the undisputed expert evidence."  Response at 4.  "As such," he reasons, "it is impractical to separate out the common sense conclusions from the expert evidence in advance of the actual trial testimony."  *Id*.  He suggests that "the court should admit the expert reports and testimony, but allow [Gressit] to make objections at trial to be ruled on at that time, in context."  *Id*.

Barclay fails to clarify what he means by "the undisputed expert evidence," and his meaning is not self-evident.  I am unaware of any agreement by the parties concerning the admissibility and/or use of portions of the experts' testimony.  I rule solely on the issue before me – whether the testimony of Hulse, Darcy, and Miller, to the extent that it bears on Gressit's alleged negligence, is predicated on common sense and should be excluded on that basis.  I intimate no ruling on whether these experts' testimony bearing on other subjects, or offered for other purposes, is admissible.

### III.  Conclusion

For the foregoing reasons, the Motion is **GRANTED**.

Dated this 24th day of July, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge